Case 5:09-cv-01179-BLF   Document 118   Filed 09/28/09   Page 1 of 7

David Merritt and Salma Merritt, *Pro se*
660 Pinnacles Terrace
Sunnyvale, CA 94085
dymerritt@hotmail.com
Tel: 408.469.5584

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SALMA MERRITT AND DAVID MERRITT, <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>COUNTRYWIDE FINANCIAL CORPORATION; ET AL, <br><br>　　　　　Defendants. | Case No. C09 01179 JW <br><br>**PLAINTIFFS RESPONSE TO DEFENDANT MOZILO'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br>Date:　　　　October 5, 2009 <br>Time:　　　　10:00 a.m. <br>Courtroom:　8, 4th Floor <br><br>Date Action Filed:  March 18, 2009 <br>Trial Date:　　　Not set |

　　　The Plaintiffs' come before the Court with their Response to Defendant Mozilo's attempt to escape from being the Chief Master Mind of the very racketeering conspiracy he dreamed up and implemented against Americans. This defendant is raising disputes against Second Amended Complaint (SAC) material allegations, which is inappropriate at this stage, and has otherwise failed to present meritorious defense.

　　　Specifically, defendant Mozilo has made an extraordinarily weak defense. He now states that there are three reasons to dismiss this action, namely: (1) the allegations are not plausible; (2) *respondeat superior* is not applicable to him; and, (3) plaintiffs allegation are torts against him.

　　　The plaintiffs incorporates their entire body of allegations set for in SAC, reasserting them

MERRITT v. COUNTRYWIDE, ET AL

PLAINTIFFS RESPONSE TO DEFENDANT
MOZILO REPLY TO OPPOSITION;
C09 01179 JW

1  in full, as well as the points, arguments and authorities set forth in each of their five responses
2  with Exhibits and Judicial Notices.

3       Defendant Mozilo takes the position that the allegations are somehow impossible to
4  believe. This defense follows the same patterns as defendants Lewis, Stumpf, BofA and CHL.
5  This is something squarely within the purview of a jury, not motion to dismiss. Nonetheless,
6  plaintiffs attaches Exhibit A, which is the Complaint filed in the Southern District of California
7  after that court ruled on RICO allegations being sufficiently pled and holding CHL et al to face
8  federal racketeering charges for the fraud, deceit and outright violations of multiple states and
9  federal laws committed while Mozilo was CEO. Also view Exhibit B which is a Florida action and
10 only one of 39 brought against Mozilo, Sambol et al. In short, Mozilo had used Countrywide as a
11 corporate enterprise to steal billions from unsuspecting American homeowners.

12      This unequivocally demonstrates that the SAC allegations are not only plausible, but only
13 touches upon the Tip of the Ice Berg, so to speak. Nonetheless, defendant Mozilo actually fancy's
14 himself to be above the law. He is actually relying on the *Ashcroft v. Iqbal*, case where it
15 addressed pleadings for federal officials. 556 U.S. ---, 129 S.Ct. 1937 (2009). Mozilo has no legal
16 standing to assert Qualified Immunity, as this Court knows, nor its pleading standards. At any rate,
17 the Court, *sua sponte,* can take Judicial Notice of all of the verifiable evidences and reports about
18 Mozilo's illegal practices reported throughout media, judiciary and prosecutor offices, to
19 acknowledge the plausibility of this action's allegations.

20      Defendant Mozilo has additionally referenced *Rodriguez v. Bear Stearns Companies Inc.*,
21 2008 WL 4831421 (D. Conn. 2008), which sought to recover damages from Wall Street for its
22 support of predatory practices against minorities. What defendant Mozilo has flatly misunderstood
23 about both the *Ashcroft* and *Rodriguez* cases is that *their Complaint were in fact conclusory.*

24      Any layperson, no less this Court, can juxtapose this action's specific allegation against the
25 *Ashcroft* and *Rodriguez* complaints and see that the plaintiffs have pled at least 50% more
26 specifics than those complaints. Plaintiffs believe that defendant Mozilo should have first retrieved
27 their pleadings from PACER before referencing their judicial rulings in this case.
28      Moreover, Mozilo has hitherto been successful at using the monies he swindled from

1  homeowners to pay high powered law firms to buy his way out of facing civil and criminal
2  charges. He is attempting to do the same in this action.

3  Regarding his second position. *Respondeat Superior* was only one of three vehicles that
4  the plaintiffs presented in their Opposition Brief for the Court to use to hold the Master Mind
5  defendants accountable for their illegal conduct. Conspiracy is chief.

6  No where are the plaintiffs alleging that Mozilo or any of the Master Mind defendants are
7  liable for the mistakes, errors or even misconduct of subordinates. The allegation is that the Master
8  Minds intentionally trained and encouraged their subordinates to purposely violate state and
9  federal lending laws through the practice of racketeering. Perhaps the plaintiffs made the mistake
10 of citing *respondeat superior and agency* along with *conspiracy* doctrines, but that does not
11 change the viability of the allegations.

12 On his third point, the plaintiffs have been excessively clear in demonstrating the specific
13 allegations of RICO conspiracy that is laced throughout with massive fraud. No where in SAC
14 does it sound in Tort. *Exhibit C*, San Diego Federal Court ruling RICO charges can move forward.

15 It is noteworthy that the San Diego RICO and Fraud allegations are much less specific in
16 detail then this action and applying 9th Circuit mandates, the court deemed such sufficient against
17 not only Countrywide Financial, but its subsidiary Full Spectrum (CHL) and BofA, under
18 Successor Liability. Not only is successor liability law applicable here, but as the SAC alleges,
19 BofA under defendant Lewis' orders, placed plaintiffs under another predatory loan in February of
20 2009, some 8 months after Lewis' worked out the conspiratorial deal with defendant Mozilo.

21 Defendant Mozilo refuses to acknowledge that the gravamen of this action is not about him
22 making loans personally or personally extending credit to them, but being the chief Master Mind
23 behind the Racketeering Conspiracy of defendants Sambol, Lewis, Stumpf et al along with their
24 specific alleged actions which produced the false advertisements, concealments and other
25 fraudulent instructions issued to their respective subordinates throughout the United States.

26 ### a. TILA Cause of Action—Defendants Used The Crediting Powers of Institutions

27 The experiences that plaintiffs underwent at the hands of Colyer, Benson, Chen, Does I
28 and II, were pursuant to the express, intentional instructions of Mozilo, Sambol, Stumpf and

1  Lewis. As majority, or major, stock holders in Countrywide, BofA and Wells Fargo who
2  dominated these institutions, defendants Mozilo et al orchestrated massive racketeering fraud
3  against plaintiffs and other Americans. They controlled the crediting powers of these institutions
4  to perpetrate their concerted fraud upon plaintiffs and others.

### b. RESPA Cause of Action

The SAC with plaintiffs Opposition Briefs clearly sets for allegations of Mozilo's personal involvement in leading the conspiracy to defraud Americans.

### c. Third Cause of Action for Discrimination

The SAC with plaintiffs Opposition Briefs clearly sets for allegations showing that it was Mozilo's personal efforts to target African-Americans and Minorities with predatory lending practices. He made this both publicly and privately known to Lewis, Stumpf et al.

### d. Fourth & Fifth Causes of Action

Both the SAC and plaintiffs' Opposition Briefs highlights the statements that defendants have trained their staff to make and advertised which induced African-, Latino- and other Americans to trust them in originating their loans. Plaintiffs references not only the attached Exhibits, but all Exhibits filed with their Opposition Briefs and requests for judicial notices to demonstrate that allegations does in fact meet both the 9th Circuit lower reasonable consumer standard as well as 40 other states standards.

### e. Sixth Cause of Action—Fraud

Defendant Mozilo does not actually present any viable challenge to the fraud allegations. The SAC clearly reflects his deep involvement in producing the fraudulent direction of Countrywide. The specificity of this action surpasses what other courts have deemed sufficient. See Exhibits A and B herein, as well as others filed in other Opposition Briefs.

### f. Seventh Cause of Action—Breach of Contract

The SAC allegations and Opposition Briefs have identified conspiratorial activities of defendants which steered plaintiffs into a loan which is illegal on its face. Not only was fraud committed in bringing them to the contract table, but at the contract table itself they were led to believe things such as their payments would go towards principle as well as interest; they would

1  be refinanced within a year's time and, inter alia, it was the best possible mortgage loan available
2  on the market for them. <u>All of these actions were part of conspiracy to defraud.</u>

3  Defendants breach of the contract in regards to the HELOC is only one breach out of many
4  as pointed out in plaintiffs Opposition Briefs. Plaintiffs do not plead allegations as professional
5  lawyers, but as laypersons. Implicit in SAC allegations regarding Colyer's statement that HELOC
6  access was denied due to devaluation of property is that he was making a false statement.
7  Plaintiffs have evidence which shows that they had not lost 5% or more at the time of HELOC
8  freezing, which again, is something meant for jury to decide.

9  Plaintiffs relied on these and other misrepresentations in agreeing to the loans, and they
10 lived up to their end 100% of the time up to October 2008. Defendants violated their end from the
11 very outset of the agreement, unbeknownst to plaintiffs at the time, to this very day. Whether or
12 not defendants see their representations to plaintiffs, that plaintiffs' identified in Oppositions, as
13 being convincing of breach or contract or not, are material issues of fact that must be decided by
14 jury.

15 Plaintiffs Opposition Briefs clearly demonstrates that defendants owed them a fiduciary
16 duty. Not only defendant Colyer, but *every defendant* because this is a conspiracy action which
17 ties the acts and omissions of one, in furtherance of the conspiracy, to each other. This is not one
18 of those cases where the Master Minds simply provided the loans as an unscrupulous lender, but
19 they became plaintiffs' Broker of the loans through their agents. This is a dispute that defendants
20 are raising inappropriately on a motion to dismiss; a jury shall have to decide this question. And
21 plaintiffs need not plead every nuance of their case nor plead evidence.

22 **g.** *Eighth Cause of Action— Illegal Debt Collection Practices*
23 This claim is against defendant BofA.

24 **h.** *Ninth Cause of Action—Failure to Provide Disclosures*
25 The record clearly shows that the defendants presented the plaintiffs with documents which
26 were *totally* blank. As the Exhibits and request for Judicial Notice reflect, this was a common,
27 systemic practice employed on African-, Latino- and other Americans throughout the United
28 States. Additionally, defendant Chen acting as the real estate agent in this case, referred plaintiffs

1  to defendants Colyer et al and working behind the scenes, conspired with Colyer to falsify the
2  value of the home so they both could earn some hundreds of dollars more than they would have
3  otherwise earned. Multiple this by all of the borrowers these defendants ran the same scheme on,
4  and hundreds of thousands of dollars were scammed from Californians.

5  Again, this was a common practice that Mozilo and other Master Mind defendants
6  conspired to perpetrate upon Americans throughout the United States. Lastly, defendant Colyer
7  was acting as the agent of Mozilo, Sambol, Countrywide et al. So his failure to disclose key
8  documents and other information showing that he was in fact brokering a loan for Mozilo,
9  Countrywide et al and that his interest and intent was only beholden to them, and not to plaintiffs
10 does in fact fall within the definition that defendants cited in their reply to plaintiffs Opposition.

11     **i.   *Tenth Cause of Action—Debt to Income Ratio Illegal***

12 Although plaintiffs may be uncertain about the exact statutes which was violated, the
13 allegations along with the Forensic Auditor Reports reflect that the defendants induced plaintiffs
14 to enter into an agreement where more than 75% then 105% of their income was to go towards the
15 mortgage. This was an illegal contract that was illegal to make in the first instance and not
16 binding. Additionally, in their collective capacity as broker of the loan, each of the defendants
17 owed a fiduciary responsibility to plaintiffs, meaning that they were not to place plaintiffs into a
18 loan which they could not pay back or otherwise afford.

19 According both to 15 U.S.C. § 1639 et seq. and California Code § 1920(a), the defendants
20 conspiratorial scheme violated these provisions since they extended credit without regard to
21 plaintiffs ability to pay. Or more accurately, extended credit knowing that they did not have the
22 ability to pay. The defendants issued mortgage agreements which were illegal on its face.

23     **j.   *Eleventh Cause of Action—RICO***

24 The SAC and Opposition Briefs speaks for themselves. Plaintiffs have demonstrated the
25 requisites for RICO. In fact, plaintiffs directs the Court to the San Diego federal court's ruling
26 where other Americans who were victim of Mozilo and company racketeering activities depicted
27 claims far less specific than this action, yet the Southern District of California applied 9th Circuit
28 mandates to determine that their claims met RICO pleading standards.

1    BofA took up the identical practices of Countrywide from July 1, 2008 onward. As
2 evidenced in its February 2009 action to place plaintiffs in another predatory mortgage and
3 repeated refusals to rectify the wrongdoing of Mozilo et al.

4    Plaintiffs' directs the Court attention to page 20 of Exhibit C attached hereto. There the
5 Southern District of California makes a lucid finding. Namely:

6    "Defendants here argue that the "unlawful practices," *i.e.*, the misrepresentations and
7 nondisclosures, were made by the <u>individual brokers</u>, therefore <u>they cannot be held liable</u> under
8 the statutes. *This argument, however, ignores* the gist of Plaintiffs' claims. Plaintiffs' *claims do*
9 *not rest solely on the specific misrepresentations or non-disclosures* allegedly made to the named
10 Plaintiffs. Rather, <u>*Plaintiffs allege that all of the Defendants were involved in a:*</u>

> <u>*systematic scheme, encompassing Countrywide's entire lending process, to*</u>
> <u>*steer borrowers into the loans that were the most lucrative to Countrywide*</u> on
> the secondary market by representing to borrowers that it was the best loan
> for the borrower, without having performed any appropriate analysis that
> would have indicated the unsuitability of the loans for such borrowers."

15 Emphases' Plaintiffs'.

17 WHEREFORE, since the SAC sets forth the requisite allegations which support claims upon
18 which relief can be granted, and the defendants have not made a sufficient showing in support of
19 their motions, the defendants motions to dismiss and to strike should be denied.

20 Dated: September 27, 2009                    Respectfully submitted,

                                                /s/ David Merritt
                                                David Merritt
                                                For Plaintiffs'

MERRITT v. COUNTRYWIDE et al

PLAINTIFFS RESPONSE TO DEFENDANT
MOZILO REPLY TO OPPOSITION;
C09 01179 JW

Page 7