David Merritt, *Pro se*
Salma Merritt, *Pro se*
660 Pinnacles Terrace
Sunnyvale, CA 94085
dymerritt@hotmail.com
Tel: 408.469.5584

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALMA MERRITT AND DAVID MERRITT,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION; ET AL,<br><br>Defendants. | Case No.: C09 01179 BLF<br>**PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO AND OSC AGAINST FORECLOSURE**<br><br>Dismissed and on Appeal |

    With all due respect, the Defendants' are misleading the Court to support violation of federal and state laws and help them cover up their fraud. The Plaintiffs have always agreed to pay their mortgage, but not the fraudulent interest rate that was unlawfully imposed.

    The Defendants are again distracting the Court's attention from the essence of things. It is the loans that is under this Court's jurisdiction and not simply Defendants. It would be far easier for this Court to conduct a hearing then burdening the 9th Circuit to get to the bottom of what is happening, because a hearing can provide fact-finding that appellate Courts are not designed to achieve.

    In February 2009 the Plaintiffs positively rescinded their loans that Countrywide originated. Not a single monthly payment, finance charge or APR was provided to them at origination and was concealed until January 2009. The Ninth Circuit in its 2014 reversal in this case established that the Plaintiffs notice

to Bank of America categorically rescinded the loans. None of this had become an issue between 2009 and 2017 because the Defendants had not chosen foreclosure as a way to deal with this. They in fact sued the Plaintiffs in State Superior Court for monetary damages versus foreclosing on them. Under California one action law, a lender must select either foreclosure or suing, and not both. In move to circumvent the rescission of the loan and California's preclusion to foreclose, the Defendants have allegedly "assigned" the loans to others, with instructions to these agents specifically SLS, US Bank, SAMI, to foreclose upon them. It is the Plaintiffs' contention that this is completely unlawful and demonstrates the racketeering nature of the Defendants' activities.

The 9th Circuit 2014 reversal and remand established *law-of-the-case* herein which held that the Plaintiffs had the right to rescind this action's loans under TILA because the Defendants had provided them with blank loan documents for three years. *Merritt v. CFC et al,* 759 F.3d 1023, 1028-1030. If the Defendants had actually provided the Plaintiffs loan documents which were completely filled in, on a purchase money loan than a question regarding rescission may arise; however, in this case 100% of the financial information was missing. So there was no loan. In addition under California law when there is fraud in the making of a contract that contract becomes nullified and void.

The Defendants have shifted the note that is at issue in this case right from under Plaintiffs in the Courts noses and are acting through their agents to commit a bona fide crime.

Under 15 U.S.C. § 1635(b) once they rescinded, the Plaintiffs were not liable for any finance charges, interest or other fees and the Defendants were then obligated to return their $200,000 or otherwise negotiate a settlement. Now they are telling this Court that, through some sort of backdoor way, they have shifted the loan(s) to others, and these "third party" actors who they hired/chose, are not

liable or responsible to follow the *law-of-the-case* or TILA, as if this washes the fraud-slate clean.

The Defendants had continued to charge Plaintiffs interest and finance charges not only after they rescinded in 2009, but even after the 9th Circuit ruled in 2014 that they had the right to rescind. When the Plaintiffs tried to enter into settlement talks after 9th Circuit reversal to work out an amicable resolution, the Defendants antagonistically refused to even sit at the table.

Plaintiffs contend that the 9th Circuit ruling applies to the loans, and not simply only upon the Defendants as they seem to propose in their Opposition. If this Court does not act to protect the status quo for this case, it will be acquiescing to our Nation's most pernicious predators and history.

The Defendants admit in their reply that they made the intentional choice to allegedly "assign" this action's Note to "third parties" who the Plaintiffs had attempted to amend to this action, but which this Court refused such. I.e. J.P. Morgan chase, SAMI, U.S. Bank et al who are the Doe Defendants cited in each complaint since 2009.

Additionally, in 2009, 2010 and 2011, Defendants BofA et al sent Plaintiffs notices of their intent to foreclose; however, on August 30, 2012, they opted to not seek foreclosure, but to countersue Plaintiffs in the state court case for monetary damages, which they subsequently defaulted on the prosecution of. California has the One Action rule under CCP § 726, which mandates that a creditor must select either to foreclose or seek monetary recovery. It does not allow a Creditor to make the selection of suing a borrower then pass Note on to another to foreclose. The action of suing the Plaintiffs in state court follows the Note, not the Defendants.

The Defendants have also omitted from their opposition that BofA et al received over one-million-dollars ($1,000,000) in insurance payments and charge-offs from Appellant's loan/deed-of-trust being in default. They then recruited US Bank to agree to being publicly reported as the trustee on their deed of trust who

paid money to become so, yet the Plaintiffs discovered that US Bank never paid Recontrust or any HDC consideration. U.S. Bank also never lent the Plaintiffs any money they have no dog in this fight, so to speak. They have simply come to the aid of Defendants to assist in covering up the fraud that is being appealed.

In a nutshell, this case is about:

(1) Countrywide Home loans (CHL), promised Plaintiffs one single prime loan with no more than 3% interest and $2,200 in payments.

(2) On May 27, 2006, CHL did a bait and switch giving Plaintiffs two subprime loans—one at 11.5% and the other at 6.5%--but left them with blank documents that did not disclose any of this until January 2009.

(3) Between two California Court of Appeal reversals and remands between 2011 to 2014, the Defendants were informed that the issuance of blank loan documents at closing and concealment until 2009 demonstrated, conspiracy to Commit fraud.

(4) In 2014 9th Circuit reversed and remanded, in part, due to the blank loan documents and concealment and decreed Plaintiffs rescission was valid.

(5) Under TILA, once a loan is rescinded, a creditor cannot continue charging a borrower and all money is supposed to be returned; however, Defendants refused to follow this law after 9th Circuit issued its ruling.

(6) On August 30, 2012, BofA exercised its right pursuant to CCP § 726, to sue the Plaintiffs for the alleged debt that it was holding against them instead of pursuing foreclosure, as it was the right to do. Hence, they were precluded under California law from seeking foreclosure because of this One Action law.

Defendants believe that by claiming to have assigned the loans to "3rd parties" who are neither creditors nor agents of a HDC, that an injunction by this Court will have no effect. Yet they show a nervousness about this and omitted that this Court has jurisdiction over the Note itself, as well as them. So issuing an order for Defendants, as well as their agents SLS and US Bank, to stop everything

related to foreclosure on this Note that is at issue in this appeal, would be an order they each would have to comply with. Then this Court can sort it out, or at minimum, send it for hearing at the district court level to ascertain what is going on here.

Can a defendant actually get rid of a fraudulently produced Note that is being directly challenged in a federal case? If so, all hope is lost.

Plaintiffs suggests that the Court should simply ask: What happened to the loan? How can a loan be given, sold or traded away while it is until extensive litigation on the state and federal levels?

The Plaintiffs believe that this is simply the continuation of the cover up which they have been alleging in this action since March 2009.

In 2017, the defendants and their agents SLS and US Bank for the first time made it known that there is a purported new creditor called structured asset mortgage investments II (SAMI) which is registered out of Delaware and is a subsidiary of JP Morgan Chase. Upon communicating with the CEO executive staff and others they have been repeatedly told that they have nothing to do with their loan. Exhibit A attached hereto was presented to them as well as to their lawyer who adamantly represented in writing to the Plaintiffs that SLS had made a false representation in this document and that neither J.P. Morgan nor SAMI are the loan's creditors.

At this very moment none of the defendants or their agents US Bank and SLS is able to identify a bona fide creditor or even a bona fide debtholder. Their mortgage loan has simply been ostensibly shifted from BofA control to a loan servicer and another bank who each say they have no financial or other interest in

the loan. Someone is simply not telling the truth and they are hiding something in order to steal the Plaintiffs home.[1]

Whether it is in the end going to be SAMI, U.S. Bank, SLS or anyone else federal law holds that when someone accepts the assignment of a debt voluntarily and fraud within that debt is made known to them that they take on the claims and liabilities as the perpetrator of the fraud, which in this case is CHL. 15 U.S.C.§ 1641. And Under the FDCPA 15 U.S.C. §§1692 et seq, a "creditor" means a person who offers or extends credit, but not a person to receives an assignment or transfer of a debt "in default" for the purpose of collecting debt. Hence, Defendants are saying they gave this action's loans to a third party who is neither a creditor nor have any creditor rights.

Hence, § 1692(4) shows that whether it was SAMI, US Bank or SLS who was assigned the debt they cannot, as a matter of law, be the creditor they can only be a debt collector who has no standing to foreclose upon the Plaintiffs. This is a significant question that has to be resolved and this Court has the authority to put a halt to this about-to-be-fraud upon the Plaintiffs again. The lower courts do not appear to stop these Countrywide and other fraudsters. Their name may be different, but their fraudulent conduct is the same.

The Plaintiffs paid nearly $200,000 of payments to CHL and BofA between 2006 and 2008 and once Plaintiffs income went from approximately $12,000 a month down to $7000 they began to uncover that their principle wasn't being paid down in checking their loan documents sought their blank spaces for for the first

---

[1] A cursory review of Court records throughout California and around the United States reveals that U.S. Bank, J.P. Morgan chase, BofA, Wells Fargo and others tend to play musical chairs in these litigations where you will see US Bank as a creditor foreclosing on someone in a trustee may be J.P. Morgan chase or you will see Bank of America foreclosing and Wells Fargo, U.S. Bank or someone else will be the trustee. There is no wall of separation between them and the purported creditor.

time. And once they received CHL versions of the documents they discovered they were victims of predatory fraud.

The allegations in this case are now a matter of public record and numerous courts as well as Congress itself. The Plaintiffs only wanted to have their $200,000 applied to their mortgage and to be given the loan they were promised and when BofA refused to do that they simply rescinded the loan and asked for their money back. BofA refused, committed additional fraud upon the plaintiffs through a predatory modification to which the plaintiffs rescinded and commenced this action March 2009. Ten years later, with millions of dollars and time lost to this litigation, now they are invested to obtain redress.

As the Court often sees, the Defendants have presented a brief which does everything to distract from the essence of this motion for injunction. The Plaintiffs have always insisted upon paying the principal of their loan with the promise interest rate; but they refuse to pay the fraudulent interest rate. For some reason the defendants have just refused any settlement or compromise on this issue and Court intervention is seriously needed before another 10 years of litigation has gone by with no just resolution.

In the end, the Plaintiffs asked this Court to protect the status quo. If they were to prevail in any way on appeal, and the defendants were allowed to either foreclose or force them into bankruptcy then irreparable damage will have been done and literally there would be no way to undo it. But these are serious questions going to the heart of this pending appeal and there is no reason why 9th Circuit should have to make its findings on the original appeal only to have its ultimate ruling usurped by these predatory debt collectors who are not even a creditor and never extended any funds to Plaintiffs nor do they have any money invested in their loans. The law does not recognize as creditors and this is another lawsuit being unfolded right before the Court's eyes.

Hence, the likelihood of success on the merits has been met, but more importantly, under 9th Circuit sliding scale rules, the irreparable harm that will be perpetrated upon the Plaintiffs significantly outweighs all the other elements and calls for the issuance of an injunction until this and/or the appellate Court can get to the bottom of the Defendants' shenanigans. They are pulling the wool over everyone's eyes.

## **CONCLUSION & ALTERNATIVE RELIEF**

If for any reason the Court is hesitant on enjoining the Defendants and their agents SLS and US Bank from further foreclosure activities during the pendency of this appeal, they would ask the Court to issue the TRO and immediately conduct an emergency hearing specifically to ascertain how is it a loan that is being attacked for fraud, and to which three Court of Appeal rulings acknowledge as much, can be shifted to other parties, and to make the determination whether it is the alleged fraudulent loans that is also the Court's jurisdiction and whether Defendants acted lawfully to "assign" it to others as well as ascertaining whether a non creditor can actually foreclose, particularly after Defendants selected to sue versus foreclosing. The Court needs to get to the bottom of this shell game with these loans.

Respectfully submitted,
Dated: June 21, 2018        //s//*David Merritt*
                                           David Merritt

Dated: June 21, 2018        //s//*Salma Merritt*
                                           Salma Merritt


Proof of service

I certify that the foregoing is being electronically serve upon the Defendants and their agents US Bank, SAMI, SLS and Zieve Brodnax & Steele on this 21st day of June 2018.

James Goldberg for BofA/CHL james.goldberg@bryancave.com
Tom Lee for BofA/CHL tom.lee@bclplaw.com
Joseph Poppen for SAMI & JP Morgan Chase joseph.poppen@bryancave.com

1. Mike Stoltzman for US Bank & SLS mstoltzman@theryanfirm.com
2. Timothy Ryan for ibid. tryan@theryanfirm.com
3. John C. Steele for Zieve Brodnax & Steele jsteele@zbslaw.com
4. Jenifer A. Needs, for Zieve Brodnax & Steele jneeds@zbslaw.com

On this 21st Day of June 2018 in Santa Clara California.

/s/David Merritt

David Merritt

---

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO AND OSC AGAINST FORECLOSURE